**Johnny Jay HARVEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–02–01197–CR.**

Court of Appeals of Texas, Dallas.

June 5, 2003.

---

Scala D. Byers, Garland, for appellant.

William T. (Bill), Hill, Jr., Garland, Christina O'Neil, Dist. Atty. Office, Dallas, for state.

Before Justices WHITTINGTON, RICHTER, and LAGARDE.[1]

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

## OPINION

Opinion By Justice MARTIN RICHTER.

Johnny Jay Harvey appeals his conviction of indecent exposure. After a bench trial, the trial court assessed punishment at 180 days confinement. On appeal, appellant contends there was a material variance between the allegations made in the information and the proof at trial, there was legally and factually insufficient evidence to sustain his conviction, and the State failed to prove a non-statutory fact defining an "allowable unit of prosecution." We affirm.

### Background

Shortly before 9:00 a.m. on March 20, 2002, Ashley Schroeder was sitting in her car in the parking lot of North Mesquite High School, when a man walked up to her car, stood outside her passenger door, and masturbated. After ignoring her request to leave, Schroeder started her car, drove away, and reported the incident to police. She told police what the man looked like, what he wore, and the direction in which he was heading. Schroeder identified appellant at trial as the man she saw indecently exposing himself in the parking lot, and she testified she was offended by his actions.

At approximately 9:00 a.m. that same day, Terry Roushey was sitting in her car in the parking lot, a public place, between Pier 1 and Starbucks on Town East Boulevard in Mesquite in Dallas County, when a man drove up and parked his blue car next to hers. Although her window was rolled up, he repeatedly asked her for directions to I-20. At first, Roushey ignored him, but then she began to roll down her window.

Immediately, the man smiled and masturbated. As Roushey began to roll up the window, she turned her head to ignore him. However, before she could completely close her window, the man screamed at her, asking her if he could perform anal sex on her. Roushey identified appellant at trial as the man she saw indecently exposing himself in the parking lot, and she testified she was offended by his actions.

During that same time frame, Mesquite Police Officers Ronald Parker and Brad Meyer were dispatched in separate squad cars to investigate an indecent exposure complaint reportedly committed by a white male in a blue Toyota. Parker was dispatched to Colter's parking lot, and Meyer was dispatched to North Mesquite High School. Meyer went to the school, received a description of the man who had exposed himself, and searched the area. Meyer then received a second call from the Old Navy retail store location, which was located at 1715 North Town East. The caller advised that a white male in a blue Toyota had just exposed himself to the caller. The caller provided a license plate number. Meyer, who was by then in the Town East area, drove towards the Old Navy store, and, as he approached the intersection of Town East and Emporium Circle, he saw a white male driving a blue Toyota. After Meyer made eye contact with the driver of the Toyota, the driver made a wide right turn, which was a traffic violation. Meyer turned in behind the vehicle, read the license plate, and noticed the plate number was one digit off from the plate number the caller had provided. As he followed the Toyota, Meyer noticed the female driver in the car in the adjacent lane was pointing at the blue Toyota. Based on the 9-1-1 operator's statement to police, Meyer believed the female driver, Roushey, was reporting the indecent exposure incident on her cellular phone with the operator as she was indicating to

Meyer the driver of the Toyota was the man who had committed the offense. Meyer then activated his overhead lights and stopped the Toyota. Parker assisted Meyer in making the traffic stop. As the police vehicles stopped, the driver of the Toyota exited his car and put his hands above his head. Although the officers' trial testimony conflicted about whether the man made certain unsolicited statements before or after he was handcuffed and placed in the backseat of the squad car, the record nevertheless reflects the man complained, replete with obscenities, that it took the police long enough to catch him and he was tired of paying rent and bills. He also said that the reason he exposed himself to others was because he "wanted to go back," and he just wanted to gratify himself before going back. After he was arrested, the two victims identified the arrested man as the person who had exposed himself to them earlier that morning. Pursuant to police procedure, Parker then conducted an inventory search of the Toyota. He found a napkin that had some type of fluid on it. At trial, Meyer and Parker identified appellant as the driver of the Toyota.

## Variance

In his first point, appellant argues there was a material variance between the information and the evidence proven at trial. Specifically, he asserts the State failed to prove the reckless act as alleged in the information.

A person commits indecent exposure if he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act. Tex. Penal Code Ann. § 21.08 (Vernon 2003).

Here, the information alleged appellant:

did unlawfully then and there expose to TERRY ROUSHEY his genitals to arouse and gratify the sexual desire of JOHNNY JAY HARVEY and said defendant did so recklessly and in conscious disregard of whether another person was present who would be offended and alarmed by such act, to-wit: by exposing his genitals and by masturbating in the presence of TERRY ROUSHEY at a public place, business located in the 1700 block of North Town East, Mesquite, Dallas County, Texas.

■ A "variance" occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State,* 46 S.W.3d 243, 246 (Tex.Crim.App.2001). In such a situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument. *Id.* We treat variance claims as insufficiency of the evidence problems. *See id.* at 247. Sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge. *See id.* at 253 (citing *Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997)). However, a hypothetically correct charge need not incorporate allegations that give rise to immaterial variances. *See id.* at 256. A variance that is not prejudicial to a defendant's "substantial rights" is immaterial. *Id.* at 248. In determining whether a defendant's substantial rights have been prejudiced, we ask two questions: (1) whether the indictment or information, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and (2) whether prosecution under the deficiently drafted indictment or information would subject the defendant to the risk of being prosecuted later for the same crime. *See id.* Only a "material" variance will render the evidence insufficient. *Id.* at 257.

■ Assuming, without deciding, that appellant's act of recklessness was that the offense occurred in a public place at a particular location, we nevertheless conclude that, upon our review of the record, there was no variance between the information and the State's proof at trial. An indictment or information is sufficient if it sets forth the alleged offense in plain, intelligible language sufficient to enable the accused to prepare a defense. *Hare v. State,* 713 S.W.2d 396, 398 (Tex.App.-El Paso 1986, pet. ref'd). The indictment or information should be read as a whole and viewed in light of common understanding. *Id.* In this case, the evidence supports a common-sense reading of the information. Roushey's testimony reflects only one incident of indecent exposure by appellant that morning. Specifically, she stated she was offended when appellant indecently exposed himself to her in a public parking lot located between two businesses in Mesquite. Meyer's testimony connects Roushey to the incident at the 1700 block of North Town East. He testified that police received two calls that a man had indecently exposed himself that morning. The second caller complained about an indecent exposure at the Old Navy store location at 1715 North Town East, and that caller provided a description of the offender, his car, and the car's license plate number. As the second caller was talking with 9-1-1, Meyer, who was in the area of Town East and Interstate 635, drove in the direction of the Old Navy store in response to the second call. He approached the intersection of Town East and Emporium Circle and noticed a man in a car that matched the description given by the second caller. The license plate number on the car was off by one digit. As Meyer was following the suspect, the complainant, Roushey, was driving next to appellant's car, pointing at appellant and identifying him as the offender. Although he testified

he did not know whether she was talking on the phone with the 9-1-1 operator as she was driving and pointing at appellant, the 9-1-1 operator told Meyer that, at that point in time, "they still had the victim[, the second caller,] on the phone." Shortly thereafter, Roushey made a "more formal ID" of appellant as the man who had exposed himself to her. Thus, the record shows through Meyer's testimony that Roushey was the second caller who complained of the crime at a business located in the 1700 block of North Town East, as alleged in the information. Accordingly, there was no variance between the information and the proof presented at trial.

Appellant also contends there was a variance because a parking lot is not "a public place, business"; they are separate entities. Based on the information in this case, we disagree. The information states that the offense occurred *at* "a public place, business," not *in* "a public place, business." A common sense reading of this language indicates that a "public place, business" would include the business' public parking lot. The cases appellant cites either support our determination that, in this case, the parking lot was a "public place, business" or they are not on point. In *Gonzalez v. State*, 664 S.W.2d 797, 801 (Tex.App.-Corpus Christi 1984), *vacated on other grounds*, No. 263-84 (Tex.Crim.App. July 18, 1984) (not designated for publication), the court held that convenience store parking lots and convenience stores are both public places. Our holding today does not conflict with *Gonzalez*. *Rouse v. State*, 651 S.W.2d 736 (Tex.Crim.App.1982), and *Pettigrew v. State*, 822 S.W.2d 732 (Tex.App.-Dallas 1992, pet. ref'd), concern whether a parking lot constitutes a public road or street. None of the cited cases determine whether a parking lot is a part of a business or

whether parking lots and businesses are mutually-exclusive entities.

We overrule the first point.

### LEGAL AND FACTUAL INSUFFICIENCY

■ We next consider appellant's third and fourth points, namely whether there is legally and factually sufficient evidence concerning the precise location of the commission of the offense, as alleged in the information.

When reviewing the legal sufficiency of the evidence, this Court examines the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State*, 905 S.W.2d 570, 574 (Tex.Crim.App.1995). In conducting a factual sufficiency review, we neutrally analyze all of the evidence, both for and against the finding. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). We will reverse only if we determine the proof of guilt is so weak or the contrary proof is so overwhelming that it renders the guilty verdict clearly wrong and unjust. *Id.* In conducting this review, we must be appropriately deferential to the fact finder's role. *Id.* Under either review, the fact finder is the exclusive judge of the witnesses' credibility and the weight to be given their testimony. *See Jones v. State*, 944 S.W.2d 642, 647-48 (Tex.Crim.App.1996).

In reviewing evidence that supports the verdict, the record shows through Meyer's testimony that Roushey was the second caller who had complained about an indecent exposure incident that had occurred that morning. Based on her call, Meyer was dispatched to the 1700 block of North Town East, the location alleged in the information. Roushey testified she was

parked in a public parking lot located in between businesses on Town East Boulevard in Mesquite, which was located in Dallas County. Her trial testimony reflects only one incident of indecent exposure by appellant that morning. That Roushey testified the offense took place at a parking lot between businesses on Town East Boulevard does not mean that that location was not in the 1700 block of North Town East. Examining this evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt the location of the commission of the offense. Thus, the State presented legally sufficient evidence that the crime occurred at "a public place, business located in the 1700 block of North Town East."

We next compare the evidence that supports the judgment to that which does not. In making this argument, appellant relies upon the entirety of the State's proof to argue that the crime occurred at a different location than the one to which Roushey testified at trial. The State attempted to prove a crime in front of the Old Navy store located at 1715 North Town East, but instead proved a crime that took place between a Pier 1 and a Starbucks. Although appellant phrases his factual insufficiency argument in legal insufficiency terms in his appellate brief, we have reviewed the record to find evidence that contradicts the judgment, and we find none. The proof of guilt is not so weak and the contrary proof, or lack thereof, is not so overwhelming that it renders the guilty verdict clearly wrong and unjust. Thus, the State presented factually sufficient evidence of the location of the offense as alleged in the information.

We overrule the third and fourth points.

### "Allowable Unit of Prosecution"

In his second point, appellant asserts the reckless act pleaded in the information was that the "offense occurred in a public place, business located in the 1700 block of North Town East." This exact location therefore became the "allowable unit of prosecution" that defined which act was being charged for jeopardy purposes. By pleading one location and proving another, the State created a material variance that implicated his jeopardy interests.

 The Double Jeopardy Clause is offended if a defendant is successively prosecuted for the same offense. *Ex parte Hawkins*, 6 S.W.3d 554, 557 (Tex.Crim. App.1999). The legislature defines whether offenses are the same "by prescribing the 'allowable unit of prosecution,' which is a distinguishable discrete act that is a separate violation of the statute." *Id.* The discovery of the allowable unit of prosecution is a task of statutory construction. *Id.*

Again, the relevant statute here provides that a person commits indecent exposure if "he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act." *See* Tex. Penal Code Ann. § 21.08(a) (Vernon 2003). Assuming, without deciding that it is the location of the commission of the offense that determines an "allowable unit of prosecution" in an indecent exposure case, the record shows, as explained above, there was no variance between the location allegation in the information and the State's proof at trial. Without such a variance, appellant's double jeopardy issue was not triggered. Even if the State were to later prosecute appellant for indecent exposure at the North Town East or Town East Boulevard location, appellant would be allowed to introduce the entire record from the first trial to protect against double jeopardy in a subsequent prosecution. *See Warren v. State*,

98 S.W.3d 739, 742 (Tex.App.-Waco 2003, pet. stricken).

We overrule the second point.

### CONCLUSION

We conclude there was no variance between the information and the State's proof at trial: the State did not plead one location and prove another. There was legally and factually sufficient evidence to prove the location of the offense. In the absence of a variance, no double jeopardy implications were triggered. We affirm the judgment of the trial court.