

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-151-CR**


JUSTIN SHANE JOHN                                                         APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Justin Shane John of assault–family violence and assessed a sentence of 365 days in the county jail and a $4,000 fine. The trial court sentenced him accordingly. Appellant brings two points, arguing that the evidence is legally and factually insufficient to sustain a verdict of guilty and that the trial court erred by admitting evidence of prior convictions during the

---

[1] *See* Tex. R. App. P. 47.4.

guilt phase because they were too remote in time and "the probative value of their admission outweighed the prejudicial value [sic]." Because the evidence is legally and factually sufficient to support the verdict, the prior offenses were not too remote, and Appellant did not preserve his remaining complaints about the admission of his prior offenses, we affirm the trial court's judgment.

After she separated from her husband, the complainant, Wendy, dated Appellant for approximately eighteen months. Wendy and Appellant lived together for about one year during that time. About three months after Wendy and Appellant stopped dating, she ran into him outside her home after she had visited with her husband and children at her mother's home. Appellant became angry, and he and Wendy began arguing. Wendy testified that when she began to walk away, Appellant grabbed her from behind with his hands around her neck. She testified that he would not allow her to leave. She testified that Appellant grabbed her face and tried to make her look at him or talk to him. She testified that Appellant punched her in the chest, knocking the breath out of her, and that he hit her in the face. Finally, they both started crying, and Wendy went into her house. Afterward, bruising was visible on Wendy's body.

Wendy did not report the assault until three days later. Her husband had told her before the assault that if he saw bruises on her again and if she continued her abusive relationship with Appellant, he would take the children

2

away from her. Wendy's family was in agreement with the husband on this point.

When Wendy went to the police department, she sought a restraining order against Appellant, but it was not her intention to seek criminal prosecution. The police took pictures of Wendy's bruises, and as a result, Appellant was subsequently prosecuted for assault–family violence. Wendy apologized to Appellant for the prosecution and told him that she did not want to see anything happen to him. She did not want to be at Appellant's trial.

Appellant's view of the events was slightly different. He testified that Wendy came over to his house on the evening in question at around 10:00 or 10:30 p.m. Although she denied it, he testified that the two spent the night together and that Wendy did not leave his house until 5:00 or 6:00 a.m. the next morning. He denied that he had hit or choked Wendy or had caused any of her bruises, and he testified that she was not injured when she left his house. Later, Appellant testified that Wendy sent him a text message apologizing and telling him that she did not mean for "that" to happen. Appellant was arrested soon thereafter.

In a single point, Appellant challenges both the legal and factual sufficiency of the evidence to support the jury's verdict.[2] In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3] Appellant does not challenge the fact that he and Wendy were in a dating relationship; he challenges only the evidence of the assault.

Section 22.01(a)(1) of the penal code provides that a person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another, including [his] spouse."[4] "'Bodily injury' means physical pain, illness, or any impairment of physical condition."[5]

At trial, Wendy testified that Appellant grabbed her around the neck with his hands, grabbed her face, punched her in the chest with his fist so that the breath was knocked out of her, and hit her face hard enough to cause a black

---

[2] *See Laster v. State*, 275 S.W.3d 512, 519 (Tex. Crim. App. 2009) (stating that "[c]ourts and litigants should not combine their legal and factual sufficiency analyses").

[3] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[4] Tex. Penal Code Ann. § 22.01(a) (Vernon Supp. 2008).

[5] *Id.* § 1.07(8) (Vernon Supp. 2008).

4

eye. She testified that when Appellant grabbed her face, it hurt and caused her pain. She also testified that when Appellant choked her, held her face, and struck her, she suffered pain.

A police officer testified that the injuries he observed on Wendy were consistent with what she had described to him, and photographs in evidence depict Wendy's bruising that she testified was a result of Appellant's assaulting her.

Appellant argues that the evidence is insufficient because Wendy's testimony was not credible. As evidence of her lack of credibility, he points to the fact that she did not report the purported assault to the police for three days after she claimed it had occurred and that she apologized to him afterward. He argues that she went to the police only after her husband threatened to take the children away if she did not end her relationship with Appellant. Wendy did testify that she only intended to get a restraining order when she went to the police and that she did not intend that Appellant be prosecuted. Appellant also points to his testimony that he did not assault Wendy on the evening in question. He argues that because his version of the facts and Wendy's differed so completely, her testimony cannot be sufficient.

The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony.[6] As trier of fact, the jury could choose to believe Wendy or to believe Appellant. Apparently, the jury determined that Wendy was the more credible of the two.[7] Viewing all the evidence in the light most favorable to the prosecution, we hold that the evidence is legally sufficient to support the jury's verdict.

In support of his factual insufficiency claim, Appellant contends that Wendy's failure to report the purported assault until three days after she claimed that it happened and the fact that she went to the police in response to her husband's threat to take the children away defeated her testimony, rendering it not credible.

We note that there was some evidence that Appellant and Wendy both had a motive to lie—Appellant did not want to go to jail, and Wendy did not want to lose her children. Additionally, Appellant's credibility was impeached, to whatever degree, by evidence of two prior felony convictions. But again, as sole judge of the credibility of the witnesses and the weight to be given to their

---

[6] *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).

[7] *See Harvey v. State*, 135 S.W.3d 712, 717 (Tex. App.—Dallas 2003, no pet.).

testimony,[8] the jury chose to believe Wendy's version of events. The photographs of the bruises and black eye show that Wendy was injured, and the officer's testimony corroborates her testimony. Applying the appropriate standard of review,[9] we hold that the jury's verdict is not so against the great weight and preponderance of the evidence as to render the jury's verdict manifestly unjust.[10] We therefore hold that the evidence is factually sufficient to support the jury's verdict. We overrule Appellant's first point.

In a multifarious complaint, Appellant appears to argue in his second point that the trial court reversibly erred by admitting evidence of his prior failure to identify conviction, three misdemeanor theft convictions, and two felony convictions during the guilt phase and also seems to suggest charge error.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the

---

[8] *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).

[9] *See Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson v. State*, 204 S.W.3d 404, 414–15, 417 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 8–9, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

[10] *See Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990).

request, objection, or motion.[11] Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.[12]

When Appellant took the witness stand, the prosecutor asked him if he had ever been convicted of failure to identify himself to a police officer when he was a fugitive from justice. Defense counsel objected, and the trial court heard the offer of proof and objection outside the presence of the jury. The trial court sustained the objection. The trial court instructed the jury to disregard the question about the failure to identify conviction. Appellant did not move for a mistrial; he therefore received all the relief that he requested and preserved no complaint for appellate review regarding his failure to identify conviction.[13]

In arguing against the admissibility of the failure to identify evidence, defense counsel stated, "He's admitted to the two felony convictions, and I believe they're entitled to that." The trial court noted that "the [d]efense is making no objection as to the two felonies." Appellant did not contradict the

---

[11] Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999).

[12] Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

[13] *See Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (stating that only essential requirement to ensure preservation is timely, specific request that is *refused* by trial court).

trial court.  Before the jury, the State offered evidence of Appellant's convictions for the felony offenses of possession of a controlled substance and unauthorized use of a motor vehicle.  Appellant did not object or raise a rule 403 complaint.  He therefore has not preserved such complaint regarding the two felony convictions for appellate review.[14]  Further, to the extent that his remoteness objection encompassed these two felonies, we hold that they were less than ten years old and admissible.[15]

Appellant refers to three burglary of a vehicle convictions.  He was not, however, convicted of burglary, but, rather, pled guilty to and was convicted of theft of less than $750 in each case.  We therefore refer to these three cases as misdemeanor theft convictions.  We understand Appellant to argue that the three 1993 misdemeanor thefts are too remote to satisfy the requirements of Texas Rule of Evidence 609,[16] although he candidly concedes that they are crimes of moral turpitude.

The theft offenses occurred in 1993 and were adjudicated in 1995.  Appellant was convicted of felony possession in 1999 and of unauthorized use

---

[14] *See* Tex. R. App. P. 33.1(a)(1)(2); *Mendez*, 138 S.W.3d at 341; *Mosley*, 983 S.W.2d at 265.

[15] *See* Tex. R. Evid. 609.

[16] *See id*.

9

of a motor vehicle in 2003. The trial on the offense now before this court took place in 2008. Appellant argues that because the 1993 thefts or his release from confinement for those convictions occurred more than ten years before the State offered the convictions into evidence at the trial on this case, the theft convictions are too remote. Appellant is only partially correct. A conviction that would ordinarily be considered too remote under rule 609(b) can be admitted for impeachment if the trial court determines in the interest of justice that its probative value substantially outweighs its prejudicial effect.[17] Additionally, even though more than ten years have elapsed, a prior conviction will not be too remote if the absence of the defendant's reformation is shown by evidence of an intervening conviction for a felony or for a misdemeanor involving moral turpitude.[18]

Here, the trial court's ruling implicitly suggests a probative/prejudicial determination. Further, Appellant's 1999 and 2003 felony convictions are sufficient to insulate the 1993 offenses from a remoteness objection.[19]

---

[17] *Jackson v. State*, 50 S.W.3d 579, 591 (Tex. App.—Fort Worth 2001, pet. ref'd).

[18] *Id.*

[19] *See id.*

10

Applying the *Theus* test to this "he-said/she-said" dispute,[20] we therefore hold that the evidence of Appellant's 1993 convictions was admissible under rule 609.

Regarding his apparent charge error complaint, Appellant cites to no authority in support of his statement that the trial court's failure to include a limiting instruction in the jury charge constitutes charge error.[21] We therefore do not consider it as a separate complaint among those raised under his second point but instead as part of the harm discussion. We note, however, that where no limiting instruction is requested when evidence is first admitted, it is admitted for all purposes, and no subsequent limitation on the evidence by means of a jury charge instruction is appropriate.[22] We therefore overrule Appellant's second point.

---

[20] *See Theus v. State*, 845 S.W.2d 874, 880–81 (Tex. Crim. App. 1992).

[21] *See* Tex. R. App. P. 38.1(I); *Tong v. State,* 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 1053 (2001); *Mosley,* 983 S.W.2d at 256.

[22] *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007).

11

Having overruled both of Appellant's points, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 25, 2009